UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

PETER G. MALYCKY,
JENNIFER A. MALYCKY,
AKA JENNIFER A. PIKE,

                      Debtors.
-----------------------------------------------------------------x
MICHAEL MCENTEE,

                      Plaintiff,

   - against -

PETER G. MALYCKY,

                      Defendant.
-----------------------------------------------------------------x

Case No. 810-72554-reg

Chapter 7

Adv. Proc. No. 810-08310-reg

## DECISION AFTER TRIAL

Before the Court is an adversary proceeding commenced by Michael McEntee (the "Plaintiff") seeking a determination that a judgment debt owed to him by Peter G. Malycky (the "Debtor"), is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). This dispute arises out of a $60,000 loan made by the Plaintiff to the Debtor and the Debtor's wholly-owned company, in June of 2006. According to the Plaintiff, he only agreed to make the $60,000 loan based on the Debtor's representation that the funds would be placed in an escrow account with the Long Island Rail Road to bond the Debtor's company's performance under a maintenance contract with the Long Island Rail Road. The Plaintiff testified that he believed the escrow funds would be returned to him upon the successful completion of the contract. As such, the Plaintiff testified that he believed this was a low-risk transaction. However, the loan proceeds were not deposited into an escrow account or held in trust, but instead were used by the

Debtor's company for general corporate purposes, including payment of an existing credit line. The Plaintiff takes the position that the debt should be determined non-dischargeable based on the Debtor's misrepresentations at the time the funds were advanced.

The Debtor maintains that he never made any representation to the Plaintiff that the proceeds would be held in trust or in escrow, and insists he told the Plaintiff that the funds would be used for working capital.

A trial was held by the Court on July 5, 2011. In his post-trial submission, the Plaintiff admits that, given the parties' differing versions of the facts, resolution of this matter depends on the documentary evidence, the parties' credibility and the plausibility of their stories. The Court does not disagree. However, it is also true that the Plaintiff has the burden to prove his case—which turns on the Debtor's alleged misrepresentation—by a preponderance of the evidence. Considering all of the evidence in this case, and the plausibility of the parties' contentions, the Court finds that the Plaintiff has presented insufficient evidence to prove that the Debtor made any express or implied misrepresentation that the loan proceeds would be held in escrow or trust. Except for one vague and uncorroborated reference to an "escrow statement" in an addendum to the loan documents, there has been no documentation presented to the Court to support the Plaintiff's position. Absent sufficient proof of a misrepresentation by the Debtor, the Plaintiff has failed to sustain his burden under any of the subsections of Section 523(a) alleged in the adversary proceeding.

*Facts*

The Debtor was the President and sole owner of Lape Building Services, Inc., d/b/a Allstate Building Services (hereinafter "Allstate"), a business engaged in window washing and other cleaning services. In April of 2006, Allstate received a Notice of Award from the Long Island Railroad for a three-year contract to perform window and floor cleaning services for approximately $68,000 per year (the "LIRR Contract").

In or about May 2006, the Debtor sought the assistance of his accountant, Lee Feldstein ("Feldstein"), in arranging a loan for Allstate. Feldstein introduced the Debtor to the Plaintiff, a client of Feldstein's for approximately 14 years. Transcript of Trial, 66:8-12. The Plaintiff and Debtor met, without Feldstein, to discuss a possible loan. The Plaintiff testified the Debtor represented to him that the funds were to be used as collateral in order to secure a bond for the LIRR Contract, the funds would be held in escrow or trust at the Long Island Railroad, and the funds would be returned to the Plaintiff at the conclusion of the LIRR Contract. Trial Tr., 68:10-13; 69:11-17. The Debtor disputes the Plaintiff's account and testified he told the Plaintiff he needed a loan for working capital and he never represented that the funds were required to post as collateral for a bond for the LIRR Contract, or that the funds would be placed in an escrow account or in trust. Trial Tr., 146.

Following the meeting between the parties, Feldstein prepared two promissory notes (the "Notes"), one from the Debtor to the Plaintiff, and the other from Allstate to the Plaintiff. On or around June 1, 2006, the Debtor signed both of the Notes in Feldstein's presence. The Notes had a term of one year, from June 1, 2006 through July 1, 2007, with an annual interest rate of 15% payable monthly beginning July 1, 2006 and continuing until July 1, 2007, at which time the

unpaid principal and interest would be due. None of the parties were represented by counsel in connection with the preparation or execution of the Notes. The Debtor paid Feldstein a $4,000 fee for securing the loan, although the Plaintiff was not aware of this payment at the time of the transaction.

Contemporaneous with the execution of the Notes, the parties executed an addendum to the Notes (the "Addendum") that stated simply: "Copy of Escrow Statement to be sent to Michael McEntee when it is available." *See* Exs. 1 and 2. No further detail was offered in the Addendum. The Debtor testified that while he initialed this provision, he did not read it, nor did he commit to place the funds in escrow or to provide the Plaintiff with an escrow statement.

Shortly thereafter, the Plaintiff transferred $60,000 to Allstate (the "Loan Proceeds"). As required by the LIRR Contract, Allstate obtained labor and material payment and performance bonds from Westchester Fire Insurance Company in the amounts of $68,000 and $207,000. *See* Exs. 5-7. Approximately $6,820 of the Loan Proceeds was used to pay the premiums for the bonds.[1] The Debtor testified that of the remaining Loan Proceeds—approximately $53,180—, $25,000 was used by Allstate to pay off an existing line of credit, $10,000 was used to pay company credit cards, approximately $14,000 was used for working capital, and $4,000 was used to pay Feldstein's fee for arranging the loan.

The LIRR Contract did not require Allstate to post any collateral security and neither of the bonds required the posting of funds into an escrow account. *See* Trial Tr., 34-35; *see also* Exs. 4-6. The Plaintiff testified that about 30 days after executing the Notes he made an oral

---

[1] Exhibit 7, a receipt from Westchester Fire Insurance Company, shows that on June 28, 2006, Allstate paid a $1,686 premium for the $68,000 bond. Exhibit 8, also a receipt from Westchester, shows that Allstate paid a $5,134 premium for the $207,000 bond.

request to Feldstein inquiring about the status of the escrow statement referred to in the Addendum. In response, Feldstein said he would try to get in touch with the Debtor. Trial Tr., 82:10-24. The Plaintiff testified he never pursued the inquiry with Feldstein any further. Trial Tr., 82:25; 83:1. The Debtor denies receiving any request for an escrow statement from Feldstein or the Plaintiff and admits that no escrow statement was ever sent by or on behalf of the Debtor or Allstate to the Plaintiff.

Despite the July 2007 loan maturity stated in the Notes, the Notes remained outstanding until the Debtor defaulted on his interest payments in March 2009. The Plaintiff testified the parties agreed to disregard the stated maturity as set forth in the Notes and agreed the Notes would be renewed at the conclusion of each year for the duration of the LIRR Contract. The Debtor would continue making interest payments until the expiration of the LIRR Contract, at which time the principal would become due. Trial Tr., 99:8-12; 110:10-12. In March 2009, the Debtor defaulted under the Notes.

In August 2009, the Plaintiff commenced an action against the Debtor in the Supreme Court of the State of New York, Suffolk County (the "State Court") based on the Debtor's non-payment. The State Court entered a default judgment (the "Judgment") on November 20, 2009 in favor of the Plaintiff against Allstate and the Debtor, individually, in the amount of $69,299.22.

*Procedural History*

On April 12, 2010, the Debtor filed a petition for relief under chapter 7 of the Code. On July 22, 2010, the Plaintiff commenced the instant adversary proceeding seeking a determination

that the Judgment debt is non-dischargeable under 11 U.S.C. §§ 523(a)(4) and (a)(6).  On June 22, 2011, the Court granted the Plaintiff leave to amend the complaint to add a request for relief under 11 U.S.C. § 523(a)(2)(A), and an amended complaint was filed.

A trial on the amended complaint was held on July 5, 2011.  On August 18, 2011, the Plaintiff filed post-trial findings of fact as well as a post-trial memorandum of law—ECF Nos. 35 and 36, respectively—at which time the Court took this matter under submission.

*Burden of Proof*

In an action commenced to determine the dischargeability of a debt, the burden of proof lies with the Plaintiff under a preponderance of the evidence standard.  *Grogan v. Garner*, 498 U.S. 279, 286 (1991).  "Exceptions to discharge under § 523 must be . . . construed so as to give maximum effect to the Code's policy of providing honest but unfortunate debtors with a 'fresh start.'"  *Scheidelman v. Henderson* (*In re Henderson*), 423 B.R. 598, 624 (Bankr. N.D.N.Y. 2010) (citing *Contini v. Cook* (*In re Cook*), 2009 WL 2872864, at **3-4 (Bankr. N.D.N.Y. Apr. 7, 2009).  It therefore follows that exceptions to discharge will necessarily be construed strictly against the plaintiff and construed liberally in favor of the defendant.  *See Hudson v. Raggio & Raggio, Inc.* (*In re Hudson*), 107 F.3d 355, 356 (5th Cir. 1997).  There must be satisfactory proof of each element of each cause of action asserted by the Plaintiff, or judgment shall be entered for the Debtor.

*Section 523(a)(2)(A)*

According to the Plaintiff's post-trial memorandum of law, the "focus" of the Plaintiff's

claims in this action are under Section 523(a)(2)(A). Pl.'s Post-Trial Mem. of Law, August 18, 2011, ECF No. 36. Section 523(a)(2)(A) provides an exception to discharge for "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." False pretenses, false representations and actual fraud are similar terms but all have somewhat different meanings. *See Voyatzoglou v. Hambley* (*In re Hambley*), 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005). One can satisfy the elements of Section 523(a)(2)(A) by establishing only one of the three types of fraud. *Gentry v. Kovler* (*In re Kovler*), 249 B.R. 238, 260 (Bankr. S.D.N.Y. 2000). Although these are separate causes of action, each one has a common element, i.e., an implied or express misrepresentation.[2] In general, a debt that is based solely upon a breach of contract will not be excepted from discharge under this section. *Sandak v. Dobrayel* (*In re Dobrayel*), 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002).

Based on the testimonial and documentary evidence, the Court finds that the Plaintiff has

---

[2] The elements necessary to satisfy a claim for false pretenses include, "(1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly by the defendants; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money, property or credit to the defendant." *In re Hambley*, 329 B.R. at 396.

The elements of a false representation cause of action are: "(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant." *Frishberg v. Janac* (*In re Janac*), 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009).

The elements for "five finger" fraud under New York state law and for 'actual fraud' under the Code are roughly the same and include: "(1) that the debtor made a false representation; (2) that at the time made, the debtor knew the statement was false; (3) the misrepresentation was made with an intent to deceive; (4) that the creditor reasonably relied on that misrepresentation; and (5) that the creditor was damaged as a result of the misrepresentation." *Citibank (South Dakota), N.A. v. Olwan* (*In re Olwan*), 312 B.R. 476, 483 (Bankr. E.D.N.Y. 2004); *compare with Global Minerals and Metals Corp. v. Holme*, 824 N.Y.S.2d 210 (N.Y. App. Div. 2006).

failed to prove by a preponderance of the evidence that the Debtor made an implied or express misrepresentation to the Plaintiff as to his intended use of the Loan Proceeds. In support of his case, the Plaintiff offers his own testimony and the Addendum to the Notes which refer, without explanation or detail, to an escrow statement to be provided when available. The Notes themselves contain no reference to a requirement for the Loan Proceeds to be held in escrow or trust. *See* Exs. 1 and 2. The LIRR Contract contains no mention of an escrow requirement. *See* Exs. 4-6; *see also* Trial Tr., 33:24-25; 34:1-14. The check written by the Plaintiff to Allstate is not made to an escrow agent as would be typical if the Loan Proceeds were to be deposited in an escrow account. *See* Ex. 9. Feldstein testified that the Debtor never asked him to include an escrow provision in the Addendum, and he could not remember whether the Plaintiff asked him to include the provision. Trial Tr., 51:22-25; 52:1-4.

The Court does not find it credible that the Plaintiff would advance to the Debtor $60,000 in what the Plaintiff believed was a low risk transaction where funds were to be deposited in escrow, and then fail to ensure that the transaction was properly documented and executed. The Plaintiff testified he is a sophisticated businessman. He is a senior director for strategic marketing at a digital communications corporation and also holds a bachelor's degree in engineering, a master's degree in computer science, and a master's of business administration. Moreover, prior to entering into this transaction with the Debtor, the Plaintiff had entered into three lending transactions involving similar dollar amounts over the previous five years. Trial Tr., 95:14-16.

Over the nearly three years between the execution of the Notes and the Debtor's breach, the Plaintiff only once, by calling Feldstein, inquired about getting a copy of an escrow

statement. Plaintiff's sole inquiry took place about one month after the Notes were signed. Trial Tr., 82:10-25; 83:1. The Plaintiff never sent a written demand or inquiry regarding an escrow statement to the Debtor or Feldstein. It was only after the Debtor stopped making interest payments in March 2009 that the Plaintiff arranged a meeting with the Debtor and Feldstein to discuss executing a new promissory note. Trial Tr., 83-85. Feldstein testified that he never sent any written correspondence to the Debtor regarding an escrow statement before or after the Debtor defaulted on the Notes in March 2009. Trial Tr., 45; 46:1. The Plaintiff continued to accept the Debtor's interest payments of 15%, or $750 per month, for nearly three years, after the maturity date stated in the Notes, without raising an issue with the Debtor regarding the failure to produce an escrow statement — until the Debtor defaulted.

It is not plausible, based on the evidence before the Court, to conclude that the Debtor in fact represented the Loan Proceeds would be used as collateral for the Debtor's obligations under the LIRR Contract and would be held in escrow. There is no evidence that an escrow or trust agreement ever existed and there was no mention of escrow or trust in any other documents except for the Addendum. The $60,000 check was remitted directly to Allstate and the Plaintiff and Feldstein by their own admission made little effort to obtain a copy of, or enforce, any purported escrow statement from 2006 through 2009. In addition, if it were the intention of the parties at the time of the initial transaction for the proceeds to serve as collateral for the LIRR Contract, then the stated term of the Notes should have corresponded to the three-year term of the LIRR Contract. When viewed in its entirety, the evidence in this case belies the Plaintiff's allegation that the Debtor made any express or implied representation that the Loan Proceeds would be held in escrow or trust as collateral for the LIRR Contract. Accordingly, the Court

finds that the Plaintiff has failed to present sufficient evidence that there was an implied or express misrepresentation or conduct by the Debtor of the kind required to support non-dischargeability under Section 523(a)(2)(A).

Although the Plaintiff chose to focus his case on Section 523(a)(2)(A), the amended complaint also asserts claims of non-dischargeability under Sections 523(a)(4) and (a)(6), and those claims will be addressed.

*Section 523(a)(4)*

Section 523(a)(4) of the Code provides an exception to discharge for any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).[3] In Count I of the amended complaint, the Plaintiff alleges that the Debtor's conversion of the escrow moneys for his own use was an "unlawful conversion and larceny of funds belonging to Plaintiff", and the Judgment debt is therefore non-dischargeable under Section 523(a)(4). Pl.'s Am. Compl. 3, June 24, 2011, ECF No. 28. In Count II of the amended complaint, the Plaintiff asserts that the Debtor's "appropriation of the escrow moneys for his own use was a defalcation in his capacity as a fiduciary to the Plaintiff." *Id.*

Addressing Count II first, it is a predicate to finding fraud or defalcation under Section 523(a)(4), that a fiduciary relationship existed between the parties. Whether a debtor is acting in a fiduciary capacity, initially, is a matter to be established under federal law. *Zohlman v. Zohldan,* 226 B.R. 767, 772 (Bankr. S.D.N.Y. 1998). Under federal law, a fiduciary relationship

---

[3] The Plaintiff does not assert a claim based on embezzlement in his original or amended complaint. Accordingly, the Court will not address embezzlement in this Decision.

is to be defined narrowly and generally exists as a result of a "technical" or "express" trust, and not an equitable trust. *In re Hayes*, 183 F.3d 162 (2d Cir. 1999); *Zohlman v. Zohldan*, 226 B.R. at 773. To determine when a 'technical' or 'express' trust exists, we look to New York law. *Zohlman v. Zohldan*, 226 B.R. at 773; *In re Yerushalmi*, 393 B.R. 288, 295 (Bankr. E.D.N.Y. 2008). A fiduciary relationship will not arise merely as a result of a lender/borrower relationship, or the failure of a borrower to repay a loan. *In re Hanson*, 432 B.R. 758, 780 (Bankr. N.D. Ill. 2010). Moreover, a mere allegation of a fiduciary relationship is "insufficient as a matter of law for purposes of asserting a nondischargeability claim under [Section] 523(a)(4)." *In re Kaufman*, 85 B.R. 706, 710 (Bankr. S.D.N.Y. 1988).

Although not clearly stated, the Plaintiff seems to take the position that because the Loan Proceeds were to be held in escrow, the entrustment of the Loan Proceeds created a fiduciary relationship between the Plaintiff and the Debtor. This argument presupposes that there was an escrow arrangement actually in existence. There is no dispute that the funds were never held in escrow or trust by the Debtor, despite Plaintiff's argument that they were supposed to be. Thus, an argument by the Plaintiff that a fiduciary relationship was created between the Plaintiff and the Debtor based on the Loan Proceeds being held in escrow is baseless and must fail.

The Plaintiff has failed to provide any evidence demonstrating that the relationship between the parties was more than a mere debtor-creditor relationship. *Nassau Suffolk Limousine Ass'n, Inc. v. Jardula* (*In re Jardula*) 122 B.R. 649, 656 (Bankr. E.D.N.Y. 1990) (finding that situations in which a debtor "merely violated the terms of his agreement with the creditor" do not fall within the ambit of a fiduciary relationship) (citing *In re Levitan*, 46 B.R. 380, 385 (Bankr. E.D.N.Y. 1985)). The Debtor and the Plaintiff had no prior relationship or

business dealings; they were parties to an arms-length lending agreement, introduced by Feldstein. There is no express provision in the Notes or any other document that calls for the creation of an escrow account, or trust, and the Court has already found that the Plaintiff failed to sustain his burden to prove by a preponderance of the evidence that the Debtor made a misrepresentation with respect to the existence of an escrow agreement.

Accordingly, the Plaintiff has failed to prove by a preponderance of the evidence that the Debtor was acting in a fiduciary capacity, and Plaintiff's dischargeability claim under Section 523(a)(4) based on fraud or defalcation while acting in a fiduciary capacity fails.

The Plaintiff has also asserted larceny as a basis for non-dischargeability under Section 523(a)(4) of the Code.[4] "Larceny" in this context has been defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *In re Balzano*, 127 B.R. 524, 532 (Bankr. E.D.N.Y. 1991) (internal citation omitted). For a defendant to be guilty of larceny, "the unlawful intent must exist at the time of the original taking." *Adam v. Scheller* (*In re Scheller*), 265 B.R. 39, 53 (Bankr. S.D.N.Y. 2001) (internal citations omitted). In addition, "[t]he larceny exception cannot apply where the debtor's original possession of the [Loan Proceeds] was lawful." *Brown v. Heister* (*In re Heister*), 290 B.R. 665, 674 (Bankr. N.D. Iowa 2003) (internal

---

[4] It is unclear whether the Plaintiff is asserting a separate claim for conversion under Section 523(a)(4). However, conversion is not a basis for dischargeability under (a)(4), but rather should be addressed under 523(a)(6). *Board of Trustees, Adirondack Carpenters Pension Fund v. Parker* (*In re Parker*) 388 B.R. 11, 22-23 (Bankr. N.D.N.Y. 2008) (concluding that "a debt arising from an unlawful conversion of property of another is not specified as nondischargeable in § 523(a) because typically a 'willful and malicious injury' under § 523(a)(6) would cover a 'willful and malicious conversion'") (citing 4 L. King, COLLIER ON BANKRUPTCY ¶ 523.12 [2], at 523-92.2 (15th ed. rev. 1998)).

citation omitted).

The Plaintiff failed to prove by a preponderance of the evidence that the Loan Proceeds were procured as a result of the Debtor's implied or express misrepresentation or conduct. It therefore follows that the Plaintiff has failed to present independent evidence necessary to establish that the property of the Plaintiff—the Loan Proceeds—was taken in a fraudulent and wrongful manner. Accordingly, the Plaintiff's cause of action for larceny under Section 523(a)(4) of the Code fails.

*Section 523(a)(6)*

Finally, the Plaintiff argues that the Judgment debt should be excepted from discharge under Section 523(a)(6) of the Code, which provides an exception to discharge for any debt arising from "willful and malicious injury by the debtor to another entity or the property of another debtor." "The terms 'willful' and 'malicious' are separate elements, and both elements must be satisfied" by the Plaintiff by a preponderance of the evidence. *Rupert v. Krautheimer* (*In re Krautheimer*), 241 B.R. 330, 340 (Bankr. S.D.N.Y. 1999). In 1998, the Supreme Court in *Kawaauhau v. Geiger*, concluded that "willful" within the meaning of Section 523(a)(6) requires a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. . . ." *Kawaauhau v. Geiger*, 523 U.S. 57, 62-63 (1998); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006). Actions which are negligent or reckless do not satisfy the Section 523(a)(6) "willful" standard.

In the Second Circuit, the term "malicious" can be actual or constructive and is defined as "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or

ill-will." *Navistar Financial Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 88 (2d Cir. 1996). A case where a debtor knowingly breaches a contractual obligation "does not satisfy the malicious element of § 523(a)(6) absent 'some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the [discharge] to which the honest but unfortunate debtor would normally be entitled under the Bankruptcy Code.'" *Rescuecom Corp. v. Mohamed E. Khafaga* (*In re Khafaga*), 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009) (citing *Novartis Corp. v. Luppino* (*In re Luppino*), 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)).

Other than the Debtor's alleged misrepresentation as to his intended use of the Loan Proceeds, the Plaintiff has failed to allege any other facts that would support a finding under Section 523(a)(6). Having already found that the Plaintiff failed to prove by a preponderance of the evidence that the Debtor made an express or implied misrepresentation as to the intended use of the Loan Proceeds, the Plaintiff's cause of action under Section 523(a)(6) of the Code fails.

*Conclusion*

For the reasons stated herein, the Court finds that the Plaintiff has failed to prove by a preponderance of the evidence that the Debtor's Judgment debt should be excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4), or (a)(6). Accordingly, Judgment will enter in favor of the Debtor.

Dated: Central Islip, New York
      December 22, 2011       */s/ **Robert E. Grossman***
                   Hon. Robert E. Grossman, U.S.B.J.